UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ABEL GONZALEZ-CASILLAS,

                        Defendant.

07 Cr. 527-1 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

The Court has received a motion from counsel for defendant Abel Gonzalez-Casillas seeking Gonzalez-Casillas's compassionate release from Federal Correctional Institution Center Butner ("FCI Butner") pursuant to 18 U.S.C. § 3582(c). *See* Dkts. 85 ("Def. Mot."), 90 ("Reply"). The Government opposes this relief. Dkt. 89 ("Gov't Opp'n"). For the reasons that follow, the Court denies the motion.

**I.     Background**

Gonzalez-Casillas was a leader in a drug-trafficking organization (the "Organization") that distributed hundreds of kilograms of cocaine in the United States. Gov't Opp'n at 1 (citing Presentence Report ("PSR") ¶ 11). Colluding with co-defendants Luis Ramirez ("Ramirez") and Israel Torres ("Torres"), Gonzalez-Casillas received kilos of cocaine from Mexico and transported them to the eastern United States, with a focus on the Bronx and Manhattan. *Id.* Gonzalez-Casillas was a leader within the Organization and operated out of Atlanta, Georgia, and the Bronx. *Id.* His actions in furtherance of the Organization included (1) in June 2006, with Ramirez, picking up and passing to a courier $914,000 in narcotics proceeds, which law enforcement seized in a stop; (2) in September 2006, arranging with two co-conspirators the sale

of 15 kilograms of cocaine, which law enforcement seized in a stop; (3) in or around October 2006, with Ramirez, directing Torres to deliver from California to Gonzalez-Casillas in New York 55 kilograms of cocaine, which law enforcement seized in a traffic stop; (4) in March 2007 with Ramirez, arranging the delivery from Arizona to Gonzalez-Casillas in North Carolina of 50 kilograms of cocaine, which law enforcement failed to find in a traffic stop; and (5) in June 2007, directing the delivery of 11.5 kilograms of cocaine to a stash house in Pennsylvania, at which law enforcement arrested several members of the Organization and seized the drugs and two handguns. *Id.* at 2 (citing PSR ¶¶ 15–17, 20).

On June 3, 2008, Gonzalez-Casillas pled guilty to the sole count of a superseding indictment. Dkt. 85-3 ("Plea Tr.") at 5–6. The indictment charged Gonzalez-Casillas with conspiring to distribute and possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. *See* Dkt. 10. The offense carried a mandatory minimum term of imprisonment of 10 years. Dkt. 85-4 ("Sent. Tr.") at 5.

On July 21, 2009, the Honorable Shira A. Scheindlin, United States District Judge, imposed a sentence of 240 months' imprisonment—well below the Guidelines range of 324 to 405 months that she had found applicable—to be followed by four years' supervised release. *Id.* at 6, 24, 31. The Guidelines range was based on a 4-point leadership enhancement and a 2-point enhancement for possessing a dangerous weapon, each found following a *Fatico* hearing; there was also a 3-point reduction for acceptance of responsibility. *Id.* at 5; Def. Mot. at 2. As reasons to vary below the Guidelines range, Judge Scheindlin cited Gonzalez-Casillas's impoverished upbringing, his harsh living conditions in the United States, and that, although he was a leader in the Organization, he was not a top decisionmaker. Sent. Tr. at 23–26, 29.

To date, Gonzalez-Casillas has served 175 months, or 73%, of his sentence.[1] Def. Mot. at 1. The Bureau of Prisons ("BOP") website estimates his release date as June 18, 2024. *See id.* Gonzalez-Casillas is subject to removal from the United States upon his release. *Id.* at 2.

On December 13, 2021, the Court received a letter motion from Gonzalez-Casillas's counsel seeking early release. *Id.* Counsel argues that compassionate release is warranted in light of (1) the COVID-19 pandemic and Gonzalez-Casillas's underlying medical conditions (he is overweight); (2) Gonzalez-Casillas's having served 72% of his sentence at the time of filing his motion (or 86% of that sentence assuming full good time credit); (3) his rehabilitation and productive activities in prison; (4) his supportive family in Mexico, which has vowed to employ him upon his post-release return; and (5) his ostensible low risk of recidivism. *See generally id.* Counsel also points to Gonzalez-Casillas's difficult personal background: As portrayed by counsel, Gonzalez-Casillas grew up impoverished in rural Mexico; his mother died weeks after he was born; his father committed suicide when he was 13; and he came to the United States illiterate, taking on menial jobs—and ultimately joining the Organization—in the hopes of giving his wife and four daughters a better life. *Id.* at 9–10.

On December 27, 2021, the Government opposed Gonzalez-Casillas's motion. It argues that there are no compelling and extraordinary reasons supporting Gonzalez-Casillas's release and that, even if such reasons were present, release is inappropriate under the sentencing factors set out in 18 U.S.C. § 3553(a). *See* Gov't Opp'n at 5–8. On January 3, 2022, Gonzalez-Casillas's counsel filed a reply. Dkt. 90.

---

[1] Assuming full 15% good time credit, which would reduce the term he would be required to serve to 204 months, Gonzalez-Casillas today has served 86% of his sentence. *See* Def. Mot. at 1. This tabulation adjusts the defense's calculation to reflect the time that has passed since Gonzalez-Casillas's motion was briefed.

3

## II. Discussion

### A. Governing Legal Principles

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons ("BOP")] to bring a motion on the defendant's behalf,"[2] a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A). Originally, § 3582(c)(1)(A) did not permit imprisoned persons to initiate compassionate release proceedings, and instead required the BOP to seek such release on their behalf. *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020). However, with the First Step Act of 2018, Congress amended the law to allow defendants independently to seek compassionate release relief from federal courts. *Id.* at 422–23.

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary, which, *inter alia*, (1) define various circumstances that present extraordinary and compelling reasons justifying release; and (2) require that a defendant not be a danger to the community. U.S.S.G. § 1B1.13(1)–(3) & cmt. n.1(A)–(D). But the Commission has not updated that provision to reflect the 2018 First Step Act's amendment to § 3582(c)(1)(A), and its guidance refers only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13.

---

[2] Gonzalez-Casillas asserts that he has exhausted his administrative appeals. *See* Def. Mot. at 5; Dkt. 85-5. The Government does not dispute this. *See* Gov't Opp'n at 4.

4

Accordingly, the Second Circuit has held that U.S.S.G § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.2d 228, 236 (2d Cir. 2020); *see also id.* at 237 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, when assessing a motion brought directly by an imprisoned person rather than by the BOP, the Court is constrained neither by U.S.S.G. 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237. However, even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

### B. Application to Gonzalez-Casillas

#### 1. Gonzalez-Casillas Cannot Establish Compelling and Extraordinary Reasons Warranting His Early Release

As his main basis for seeking relief, Gonzalez-Casillas cites the COVID-19 pandemic, its impact on the conditions of his confinement, and his higher risk of contracting a severe infection because of his weight. Def. Mot. at 5–9.

In a number of cases involving defendants with significantly heightened vulnerability to COVID-19 and who had served the bulk of their sentences, this Court has granted early release pursuant to § 3582(c). The Court and others in this District have set out the reasons for ordering the expedited release of high-risk inmates, whether in the context of the temporary release from

5

pretrial or presentencing custody[3] or, as sought here, the compassionate release during the service of a federal sentence.[4]

---

[3] *See, e.g.*, *United States v. Chandler*, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, 450 F. Supp. 3d 449, 451–53 (S.D.N.Y. 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded guilty to a narcotics offense); *cf. United States v. Stephens*, 447 F. Supp. 3d 63, 67–68 (S.D.N.Y. 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release).

[4] *See, e.g.*, *United States v. Phillibert*, No. 15 Cr. 647 (PAE), Dkt. 65 at 9–11 (S.D.N.Y. Sept. 1, 2021) (ordering compassionate release into home confinement of defendant who was obese, a former smoker, had not been provided with the use of his inhaler despite suffering from Chronic Obstructive Pulmonary Disease, contracted COVID-19 in prison, and who had served approximately 90% of sentence); *United States v. Ciprian*, No. 11 Cr. 1032-74 (PAE), Dkt. 2581 at 2, 7–9 (S.D.N.Y. Feb. 1, 2021) (ordering compassionate release of defendant who had COVID-19 and served over 90% of sentence, and Government conceded that there were extraordinary and compelling reasons for release); *United States v. Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *2, *5–6 (S.D.N.Y. Jan. 15, 2021) (ordering compassionate release of defendant who suffered from obesity, hypertension, prediabetes, and hepatitis C, had served 70% of their sentence, was a non-violent drug dealer, and Government conceded that there were extraordinary and compelling reasons for release); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (S.D.N.Y. Sept. 15, 2020) (ordering compassionate release of defendant who had asthma and had served nine years of his 10-year sentence); *United States v. Wilson*, 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heightened vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 18 Cr. 390 (PAE), Dkt. 507, at 5–9 (S.D.N.Y. Aug. 27, 2020) (ordering compassionate release of elderly defendant who had served over half his sentence, suffered from, *inter alia*, HIV, cancer, and hypertension, and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 at 2–4 (S.D.N.Y. Apr. 10, 2020) (same for defendant who had served all but seven months of an 88-month sentence); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence); *Hernandez*, 2020 WL 1684062, at *3

Gonzalez-Casillas, however, has not demonstrated that he faces a significantly heightened risk of contracting COVID-19. The pandemic, he notes, poses a general health risk for all federal detainees. And, he states, he faces an added risk, because of his "advanced age"—he is age 50—and because he is 50 pounds overweight, with a body mass index ("BMI") of 27.3.[5] He also notes that his conditions of confinement are harsher than could have been foreseen when he was sentenced, in that, as a result of the pandemic, there have been prolonged prohibitions on social visits, reduced mobility, and restrictions on rehabilitative programs. *Id.*

Gonzalez-Casillas's account of the harsh impact of the pandemic on federal prisoners in general is surely correct. But he has not shown himself significantly more vulnerable to the risks of COVID-19 than the average inmate incarcerated at FCI Butner. And "the mere allegation that one is overweight, in prison, and that there is a COVID-19 outbreak nationwide is not sufficiently extraordinary and compelling to justify early release." *United States v. Broadus*, No. 17 Cr. 787-2 (RJS), 2020 WL 3001040, at *2 (S.D.N.Y. June 4, 2020) (cleaned up); *see also United States v. Fiseku*, No. 15 Cr. 384-1 (PAE), 2020 WL 7695708, at *4 (S.D.N.Y. Dec. 28, 2020), *reconsideration denied*, No. 15 Cr. 384-1 (PAE), 2021 WL 633103 (S.D.N.Y. Feb. 18, 2021) (finding no "significantly heightened vulnerability to COVID-19" where defendant was "age 49, overweight, and incarcerated at a facility with a recent rise in COVID-19 cases"); *United States v. Gomez*, No. 15 Cr. 348 (PGG), 2021 WL 4150966, at *2 (S.D.N.Y. Sept. 13, 2021) (denying compassionate release where defendant was "overweight but not obese, [and had] been diagnosed with hypertension and Type 2 diabetes"). Gonzalez-Casillas's familiar

---

(same for defendant who had served 17 months of a 24-month sentence and was scheduled for release in four months).

[5] A person is classified as "overweight" if his BMI falls between 25 and 30. Def. Mot. at 8.

physical conditions do not rise to the level of being extraordinary and compelling reasons for relief. *See United States v. Robles*, No. 08 Cr. 1114 (PAE), 2021 WL 3524067, at *6 (S.D.N.Y. Aug. 10, 2021) ("COVID-19 has posed a heightened health risk to all inmates . . . even healthy inmates.").

The health risk presented to Gonzalez-Casillas is further reduced by the fact that he has previously contracted the virus and recovered, Def. Mot. at 1, and that, as of November 3, 2021, has received two doses of the COVID-19 vaccine. Gov't Opp'n at 3–4 (citing BOP medical records). As a defendant who has non-severe health conditions, is fully vaccinated, and previously contracted the disease, Gonzalez-Casillas is "at a fairly low risk contracting it, or of suffering from a severe case if he were to do so." *United States v. Hoey*, No. 15 Cr. 229 (PAE), 2021 WL 2689215, at *5 (S.D.N.Y. June 30, 2021) (denying motion for release); *see also Robles*, 2021 WL 3524067, at *6 (inmate contracted the virus and recovered "with (to date) no short- or long-term complications").

The Court thus does not find a compelling or extraordinary basis for release on account of the risks presented to him by the pandemic. Had Gonzalez-Casillas genuinely been at high medical risk, that he has served most of his sentence would assist his bid for release. But this fact, on its own, does not make an inmate's circumstances extraordinary. *See, e.g., United States v. Ortiz*, No. 16 Cr. 439 (PAE), Dkt. 84 at 2, 6–7 (S.D.N.Y. July 6, 2020) (denying compassionate release of 49-year-old defendant with borderline obesity who had served 70% of 84-month sentence for conspiracy to commit Hobbs Act robbery); *see also United States v. Romero*, No. 15 Cr. 445 (PAE), 2020 WL 2490027, at *1 (S.D.N.Y. May 14, 2020) (denying compassionate release for defendant without heightened health risk who had served

"approximately 54 months of his significantly below-guidelines sentence of 78 months' incarceration").

## 2. Assessment of Section 3553(a) Factors

In any event, even assuming that Gonzalez-Casillas's weight or BMI index presented—in light of COVID-19—a compelling and extraordinary basis for his release, reducing his sentence to permit release today would be inconsistent with the 18 U.S.C. § 3553(a) factors, viewed in their totality.[6]

As Judge Scheindlin carefully explained at sentencing, although a below-Guidelines sentence was warranted, the facts of Gonzalez-Casillas's offense made a 240-month term of imprisonment necessary. As the *Fatico* hearing established, he took a "leadership role" and had "decision-making authority here in the U.S.," Sent. Tr. at 23, over the conspiracy. And the conspiracy was deeply destructive to society: Its members "distributed more than a thousand kilograms of cocaine worth millions of dollars" and used firearms. *Id.* at 26. Gonzalez-Casillas's leadership role also "weigh[s] heavily against granting" compassionate release. *United States v. Garcia*, No. 04 Cr. 603 (AJN), 2022 WL 255113, at *6 (S.D.N.Y. Jan. 26, 2022); *see also United States v. Thomas*, No. 13 Cr. 360 (AJN), 2021 WL 4095257, at *2 (S.D.N.Y. Sept. 8, 2021) (denying release where defendant "played a lead role in a conspiracy to ship 80 kilograms of cocaine worth millions of dollars into the United States" (internal quotation marks omitted)); *United States v. Fernandez*, No. 12 Cr. 844 (AJN), 2020 WL 3034799, at *3

---

[6] These factors include "the nature and circumstances of the offense," "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

(S.D.N.Y. June 5, 2020) (denying release where "the Defendant played a significant role in trafficking a very large amount of cocaine in a relatively short period of time").

Defense counsel's compassionate release motion focuses heavily on—apart from his ostensible vulnerability to COVID-19—Gonzalez-Casillas's personal characteristics. Counsel notes Gonzalez-Casillas's difficult upbringing and his hope to better the lives of his wife and four children, Def. Mot. at 9–10, his productive activities and educational achievements in prison, *id.* at 10–11, and his family's ongoing support of him, as reflected in their willingness to house and employ him upon his return to Mexico, *id.* at 12.[7]

For the purpose of this motion, the Court credits counsel's representations as to Gonzalez-Casillas's rehabilitation and aspirations. These reflect well on him. But at sentencing, Judge Scheindlin explicitly considered the mitigating aspects of Gonzalez-Casillas's background, Sent. Tr. at 22–23, as well as the support of his family, *id.* at 23, 26–27. These facts influenced her determination to impose a below-Guidelines sentence. *Id.* at 24–25. Having already been taken into account, they do not disturb the § 3553(a) equation. *See United States v. Martinez*, No. 11 Cr. 1032-79 (PAE), 2021 WL 2821151, at *5 (S.D.N.Y. July 7, 2021).

---

[7] Counsel also argues that the recidivism risk for someone in Gonzalez-Casillas's position is statistically low—between 16.1% and 38.1% depending on how various criteria are weighted. Def. Mot. at 13. It is far from clear to the Court that a narcotics trafficker's risk of recidivism that approaches 40% can be credibly called low or acceptable or that it would be happily tolerated by the persons in Gonzalez-Casillas's immediate community after release. (Given his expected deportation, these would likely be residents of Mexico.) In all events, the data on which counsel tabulated the likelihood of recidivism—Gonzalez-Casillas's age at the time of release, base offense level, offense type, and criminal history—were known to Judge Scheindlin at sentencing. *See* Sent. Tr. at 5–6, 13. *See also United States v. Marrero*, 11 Cr. 568 (PKC), 2020 WL 7079483, at *5 (S.D.N.Y. Dec. 3, 2020) (finding that defendant's recidivism risk was too high because he, *inter alia*, "willingly participated in a drug-trafficking organization" that "distribut[ed] significant quantities of controlled substances," committed the crime at the "[]mature age" of "44–45 years," and was a firearms offender in connection with the crime).

10

Gonzalez-Casillas's productive use of his time in prison, in contrast, is new information. But, without more, these salutary steps are insufficiently weighty to offset the powerful reasons Judge Scheindlin gave for sentencing him, as an armed leader in a large drug conspiracy, to 20 years in prison. "Making good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Negron*, No. 11 Cr. 324 (CS), 2021 WL 3540240, at *2 (S.D.N.Y. Aug. 10, 2021) (citing *United States v. Alvarez*, No. 89 Cr. 229 (JS), 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)). The Second Circuit emphasized this point in *Brooker*: "Rehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." 976 F.3d at 238 (quoting 28 U.S.C. § 994(t)) (emphasis in *Brooker*).

For all these reasons, the Court finds the § 3553(a) factors incompatible with a reduction of sentence in this case.

The Court accordingly denies Gonzalez-Casillas's motion for compassionate release or for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Clerk of Court is respectfully directed to close the motions pending at docket numbers 85 and 90.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: February 11, 2022
New York, New York

11